235 Cal.App.2d 689 (1965)
45 Cal. Rptr. 651
CENTRAL BASIN MUNICIPAL WATER DISTRICT, Petitioner,
v.
CARL FOSSETTE, as Secretary of Central Basin Municipal Water District, Respondent; AZUSA AGRICULTURAL WATER COMPANY et al., Real Parties in Interest.
Docket No. 29447.
Court of Appeals of California, Second District, Division One.
July 15, 1965.
*691 Burris & Lagerlof, Stanley C. Lagerlof, H. Jess Senecal and Jack T. Swafford for Petitioner.
Surr & Hellyer, Clayson, Stark, Rothrock & Mann and John B. Surr, as Amici Curiae on behalf of Petitioner.
Tuttle & Taylor, William A. Norris and Alan Beban for Respondent.
No appearance for Real Parties in Interest.
FRAMPTON, J. pro tem.[*]
The petition herein was filed on May 19, 1965, in the Supreme Court and was thereafter transferred here for decision.
Petitioner seeks a writ of mandate to compel respondent, as its secretary, to certify to the passage and adoption of its resolution Number 2-65-185, and to transmit a duly certified copy thereof to the Upper San Gabriel Valley Municipal Water District.
Petitioner is a municipal water district organized under the Municipal Water District Law of 1911, as amended. (Stats. 1963, ch. 156, div. 20; Wat. Code, § 71000 et seq.) Petitioner's boundaries lie within the County of Los Angeles and its principal office is located therein. Respondent, at all times since February 10, 1965, has been and now is the duly appointed, qualified and acting secretary of petitioner. *692 [1] It is respondent's obligation as secretary to perform in addition to the duties imposed on him by law, such duties as may be imposed on him by the board of directors of petitioner. (Wat. Code, § 71360.) [2] The duties imposed on respondent by law and by petitioner's board of directors include those relating to the certification of the passage and adoption of ordinances, resolutions, motions and orders of the board of directors of petitioner.
Petitioner, Board of Water Commissioners of the City of Long Beach, and the City of Compton, a municipal corporation, are plaintiffs in an action commenced May 12, 1959, Number 722647, in the Superior Court of the State of California, in and for the County of Los Angeles, against nine cities, two county water districts and 17 public utilities and private water companies, each of which defendants is located within and produces water from an area upstream on the San Gabriel River from the area in which plaintiffs are located. The defendants named and served in said action, together with California Domestic Water Company and the City of Whittier, constitute the major producers of water in the area in which they are located. Issue was joined on the filing of the answers to the amended complaint. By the amended complaint, petitioner and the other plaintiffs, (a) sought to compel each of the defendants to set forth the nature and extent of its claims in and to the water referred to therein as being the water of the "San Gabriel River System," (b) requested that the court fix and determine the rights, if any, of each defendant in and to said water, and (c) requested that each defendant therein be perpetually restrained and enjoined from taking such water in excess of the amount so fixed and determined by the court. After the commencement of the action there were certain dismissals had and new parties added where there had been mergers or transfers of water rights. California Domestic Water Company, a corporation, and Upper San Gabriel Valley Municipal Water District, a municipal water district (hereinafter referred to as "Upper District"), intervened as parties defendant.
On February 10, 1965, issues having been joined, the petitioner and the two other plaintiffs and the defendants entered into, executed and filed, in the action, a stipulation for judgment which became fully effective on said date. The stipulation provided, inter alia, that upon the occurrence of specified conditions precedent, the form of judgment attached *693 thereto should be rendered. The judgment provided for the appointment of a "Watermaster" consisting of three persons, one as a representative of "Lower Area Parties" (as that term is defined in paragraph 3(c) of the judgment), another acting as the representative of "Upper Area Parties" (as that term is defined in paragraph 3(d) of the judgment), and a third person jointly nominated by petitioner and Upper District. The Watermaster, when duly constituted and appointed pursuant to paragraph 6 of the judgment, will administer and enforce the provisions of the judgment and the instructions and subsequent orders of the court. In order to perform those duties, the Watermaster, by paragraphs 7 through 13 of the judgment, is given certain powers and duties, including the collection of information and data concerning the quantities and quality of various categories of water passing from "Upper Area" (as that term is defined in paragraph 3(e) of the judgment) to "Lower Area" (as that term is defined in paragraph 3(f) of the judgment). Paragraph 4 of the stipulation for judgment provides as follows:
"Plaintiffs and defendants agree that during the period prior to entry of the attached form of Judgment, they will cooperate in endeavoring to collect such information as the Watermaster would obtain if the attached form of Judgment had been entered and the Watermaster had been appointed by the Court pursuant to paragraph 6 of the Judgment, which information is herein referred to as `said information.' To that end, the parties hereto hereby agree that promptly following the complete execution of this stipulation by all parties, Upper District and Central Municipal shall each notify the other in writing as to the identity of the person who it expects will be nominated as the representative of Upper Area Parties or Lower Area Parties, as the case may be, under paragraph 6 of the Judgment. Upon receiving such notice, Upper District and Central Municipal shall each instruct its designated nominee that until the attached form of Judgment is entered and the Watermaster has been appointed pursuant to paragraph 6 of the Judgment he shall in cooperation with the other designated nominee do all things reasonably necessary to obtain such of said information as is available from the parties hereto or any public agency."
On February 17, 1965, petitioner received a certified copy of a resolution adopted by the board of directors of Upper *694 District, determining that Thomas M. Stetson was the person expected to be nominated as the representative of the Upper Area parties under paragraph 6 of the judgment. Following the execution of the stipulation for judgment by all parties, petitioner's board of directors did determine, on February 18, 1965, the identity of the person (hereinafter sometimes referred to as "said designee") whom petitioner expected would be nominated as the representative of said Lower Area parties under paragraph 6 of the judgment. Identification of Max Bookman as said designee was fixed by resolution Number 2-65-185 duly adopted by petitioner's board of directors on the above mentioned date. By the terms of said resolution, respondent was ordered to give the necessary written notice to Upper District, identifying said designee by certifying to the adoption of said resolution and by transmitting a duly certified copy thereof to Upper District. On March 17, 1965, respondent did refuse to either certify or to transmit as ordered a certified, or any, copy of said resolution. Respondent bases his refusal to act upon the grounds that a substantial question exists as to the validity of the stipulation for judgment: "(i) because of the lack of statutory power of petitioner to enter into the Stipulation for Judgment; (ii) because of the lack of statutory power of Upper District to enter into the Stipulation for Judgment; and (iii) irrespective of the power of either petitioner or Upper District to enter into Stipulation for Judgment."
Respondent's refusal to comply with the order and direction of petitioner's board of directors was communicated to them at the board's regular meeting held on March 17, 1965, whereupon the board duly adopted its resolution Number 3-65-186, wherein the determination embodied in and approved by resolution Number 2-65-185, was approved, ratified and confirmed, and respondent was further ordered to give the necessary written notice to Upper District identifying Max Bookman as said designee by certifying the adoption of resolution Number 2-65-185 and by transmitting a certified copy thereof to Upper District. Contrary to such further order, respondent did refuse, at the meeting on March 17, 1965, and still refuses either to certify or to transmit, as required, a certified or any copy of resolution Number 2-65-185.
Petitioner asserts that the respondent is adversely affecting and frustrating the agreement of petitioner and Upper District to perform the stipulation for judgment in accordance with its terms, particularly as provided in paragraph *695 4 thereof, in that until said written notification is given to Upper District, Upper District cannot lawfully comply with paragraph 4 of the stipulation and instruct its said designated nominee that he shall, in cooperation with the designated nominee of petitioner, do all things reasonably necessary to obtain the information referred to in said paragraph 4 as "said information" to the extent such information is available from the parties to the stipulation for judgment or any public agency. Petitioner urges that respondent's failure to act is delaying the day when there will be delivery to said Lower Area of such quantities of "Make-up Water" (as that term is defined in paragraph 3(m) of the judgment) as it is entitled to receive pursuant to the terms of the judgment once such judgment is rendered, in that (1) respondent's refusal will result in a substantial delay in the program for cooperative collection of that information which the Watermaster would obtain after the judgment had been entered and the Watermaster had been appointed by the court pursuant to paragraph 6 of the judgment, and (2) the delay in collecting such information will necessarily mean all such information will have to be collected after the Watermaster is appointed by the court, resulting in an extended delay in the making of the numerous determinations required by the Watermaster, which determinations provide the basis for the obligation of Upper District to deliver such "Make-up Water," such obligation being determined from October 1, 1963, under the terms of the judgment.
Petitioner asserts that the controversy involved in action Number 722647 and its resolution by the stipulation for judgment and entry of the judgment, attached thereto, present vital questions affecting the public health, necessity, and welfare of a substantial portion of southern California areawise and populationwise. That the case involves questions of water rights as between owners of water rights, owners of land, and inhabitants, of two adjacent areas, the Upper Area and the Lower Area, which areas contain approximately 408.344 square miles, having a population of approximately 2,319,408 and an assessed valuation of approximately $4,116,788,225. That Upper Area contains, in addition to county territory, the 15 cities located within Upper District, plus the cities of Alhambra, Monterey Park, Azusa, and West Covina. Upper Area contains approximately 166.47 square miles, has a population of approximately 737,431 and an *696 assessed valuation of approximately $1,174,034,000. Of those totals, Upper District contains approximately 132.47 square miles, a population of approximately 538,569, and an assessed valuation of approximately $855,754,000. Lower Area contains approximately 241.874 square miles, a population of approximately 1,581,977 and a total assessed valuation of not less than approximately $2,942,754,225. Of those totals, petitioner has approximately 186.78 square miles, a population of approximately 1,136,407 living in 22 cities and county territory, and a total assessed valuation of not less than approximately $2,162,434,835. The City of Long Beach has approximately 46.77 square miles, a population of approximately 368,782 and an assessed valuation of not less than approximately $683,058,000. The City of Compton has approximately 8.324 square miles, a population of approximately 76,868 and an assessed valuation of not less than approximately $97,261,390.
It is urged that Upper District and other agencies in the Upper Area need and desire to intensify efforts immediately to replenish ground water supplies in Upper Area. That so long as action Number 722647 is pending and the judgment is not entered, it is, as a practical matter, impossible for such efforts to be undertaken in any substantial respect because the physical facts, such as location and capacity of water spreading grounds make it relatively certain that Lower Area would be the immediate and primary beneficiary of much of such replenishment, and it would, therefore, be uneconomical and unwise to expend Upper Area funds for such replenishment. It is urged further that Upper Area presently has no public agency such as a replenishment district with power to assess a pump tax to cover the cost of purchasing and spreading imported water in Upper Area. Nor can the pumpers in Upper Area justify, as a business decision, voluntarily engaging in such activities on a joint cooperative basis unless and until the issues in action Number 722647 can first be resolved. It is urged that it is important that delivery of make-up water under the terms of the judgment be expedited to the greatest extent possible so as to maximize the chances for success of extensive efforts recently taken by it on behalf of Lower Area parties to mitigate salt water intrusion in certain coastal areas due to excessive overdrafting of presently inadequate supplies of fresh water. That the effective date of the judgment for the purpose of determining the rights and obligations of the parties thereunder is October 1, 1963, and therefore, it is of the utmost concern that a final *697 judgment be obtained at as early a date as possible so that the necessary quantities of water, both natural and supplemental, will flow from Upper Area into the Central Basin and prevent further salt water intrusion.
Petitioner urges further that controversies over water rights as between adjacent areas deriving their natural water supplies from a single river system are now frequently before the courts of California. That the Santa Ana River system, for example, has twice been the subject of such an action. (Orange County Water Dist. v. City of Riverside (1957) 154 Cal. App.2d 345 [316 P.2d 43]; (1959) 173 Cal. App.2d 137 [343 P.2d 450]; Orange County Water District v. City of Chino, et al., Orange County Superior Court, Number 117628, filed October 18, 1963.) The second such action is still in its initial exploratory stages. Petitioner estimates that if it becomes necessary to try action Number 722647, a minimum of 200 days of trial time will be necessary in order to properly try the case. Therefore, if the approach taken by the judgment attached to the stipulation for judgment is approved as a valid solution for the controversy involved, it will offer an acceptable prototype consent judgment for use by the parties in other similar river adjudication actions. That such a consent judgment will relieve the courts of the considerable burden upon available court trial time, and will substantially reduce the time between the commencement of such actions and the date when effective relief is available to the downstream users.
Respondent has interposed a demurrer to the petition claiming four major grounds upon which the stipulation and proposed judgment should be held invalid as a matter of law. Under these circumstances, we must assume the truth of all material allegations of fact set forth in the petition. (Stigall v. City of Taft, 58 Cal.2d 565, 567-568 [27 Cal. Rptr. 441, 375 P.2d 289]; 3 Witkin, Cal. Procedure (1954) pp. 2553-2554.)
We will discuss the four grounds of alleged invalidity in the order in which they appear in the demurrer.

I
It is claimed that the stipulation for judgment is invalid because such an agreement is beyond the powers granted to petitioner by law.
[3] Section 71751 of the Water Code provides "A district may commence, maintain, intervene in, and compromise, in the name of the district, any action or proceeding involving *698 or affecting the ownership or use of water or water rights within the district, used or useful for any purpose of the district, or a common benefit to lands within the district or inhabitants of the district." (Italics added.) The stipulation for judgment here under consideration, when carried into effect by the terms and conditions of the judgment attached to and made a part of it, will constitute a compromise and settlement of a controversy affecting the ownership and use of water and water rights as contemplated by such section, and the section constitutes a valid legislative sanction of the procedure adopted by petitioner in the trial court.

II
Respondent urges that the clear implication of the stipulation is that the Upper District, in exchange for its obligation to cause 98,415 acre-feet of water to be available to Lower Area users, is obtaining a relinquishment of all rights that Lower Area parties may have, vis-a-vis Upper Area parties, in the natural waters of the San Gabriel River system, whether as riparian owners, overlying owners or appropriators, and that to the extent that the stipulation would divest the persons represented by petitioner Central Municipal of their water rights, it is invalid. He urges further that the extraordinary power to divest private citizens of their property rights in the absence of an exercise of the power of eminent domain, is obviously not expressly granted to the district and is, therefore, available only if it can be implied from the grant of power to compromise actions pursuant to the provisions of section 71751 of the Water Code. The answer to this is contained within the four corners of the stipulation and proposed judgment. These documents do not purport to deprive any individual of a property right, but on the contrary disclose a careful and concerted effort on the part of the litigants to conserve and protect the individual rights to the use of water within the watershed, where the need for such water is growing and the supply is limited. The provisions of the stipulation and proposed judgment have not been arrived at by guess and speculation, but on the contrary according to the memorandum of points and authorities of amici curiae in support of the petition,[1] *699 since May of 1959, when the action was commenced, there have been constant studies and negotiations toward settlement. Negotiating committees of five men each were appointed for the plaintiffs and for the defendants represented by amici curiae. These committees met together on 45 different occasions. In addition, there were literally hundreds of conferences both between opposing counsel and among the attorneys and experts on both sides. Further there were almost continuous studies of various aspects of the hydrologic picture. Expenses involved in arriving at the settlement represented by the stipulation and proposed judgment are estimated to exceed $300,000 disregarding the value of the time devoted by members of the negotiating committees. It cannot be said that prolonged and costly litigation on the same subject would result in any different or better solution than the physical solution arrived at and contained in the stipulation and proposed judgment. Furthermore, the proposed judgment, in paragraph 15, provides in part "Full jurisdiction, power and authority is retained and reserved by the Court for the purpose of enabling the Court upon application of any party by motion and upon at least thirty (30) days notice thereof, and after hearing thereon (i) to make such further or supplemental orders or directions as may be necessary or appropriate for the construction, enforcement or carrying out of this Judgment, and (ii) to modify, amend or amplify any of the provisions of this Judgment whenever substantial changes or developments affecting the physical, hydrological or other conditions dealt with herein may, in the Court's opinion, justify or require such modifications, amendment or amplification...." Certainly, a determination of individual rights is deferred or suspended so long as the physical solution shall continue in effect. However, the proposed judgment does not by its terms or by implication eliminate or impair whatever rights the Lower Area parties may now have, even though it does not pass upon them so long as they are being taken care of by the physical solution. [4] The adoption by the parties of a reasonable physical solution to the complicated problems relating to their respective rights in the use of the water within the San Gabriel River system is in accord with the rule laid down in City of Lodi v. East Bay Mun. Utility Dist., *700 7 Cal.2d 316, 341 [60 P.2d 439], wherein the court said "Other suggestions as to possible physical solutions were made during the trial. The trial court apparently took the view that none of them could be enforced by it unless the interested parties both agreed thereto. That is not the law. Since the adoption of the 1928 constitutional amendment [art. XIV, § 3], it is not only within the power but it is also the duty of the trial court to admit evidence relating to possible physical solutions, and if none is satisfactory to it to suggest on its own motion such physical solution." In the present action all parties thereto have agreed to the proposed physical solution.
The propriety of the resolution of complex problems relating to conflicting claims to the right to use water, by the adoption of a physical solution of such problems was also approved in the case of Rancho Santa Margarita v. Vail, 11 Cal.2d 501, 558-562 [81 P.2d 533].
The proposed judgment also provides in part (Declaration of Right, paragraph 4); "... If in the future a court of competent jurisdiction shall decree that any person downstream from Whittier Narrows within Central and West Basin Water Replenishment District who is not bound by this Judgment, shall have, as against Upper Area Parties and substantially all other pumpers in the San Gabriel Valley, a right to receive from Upper Area a stated amount of usable supply consisting of Surface Flow, Subsurface Flow, Export to Lower Area or Make-up Water, which right arose out of and is based upon the ownership of land or the production of water downstream from Whittier Narrows and within Central and West Basin Water Replenishment District, then and in that event the stated amount of such right so decreed shall not increase the declared right as set forth in this paragraph 4 [Note: The right of Lower Area parties and all other persons downstream from Whittier Narrows, who receive water from the San Gabriel River system or have rights in and to such water, to receive from Upper Area an average annual usable supply of 98,415 acre-feet]; and the receipt of water from Upper Area by such person in such stated amount or portion thereof, consisting of Surface Flow, Subsurface Flow, Export to Lower Area or Make-up Water, shall be deemed a partial satisfaction of such declared right." This provision tends to preserve to an individual the privilege to establish, in a proper case, his right to use a specified quantity of water, rather than to destroy such right. [5] Where a judgment provides for a physical solution of the rights of litigants to the use *701 of water, and includes therein appropriate flexibility to meet pertinent changes and developments, it is proper that a trial court should retain jurisdiction over such decree. (City of Pasadena v. City of Alhambra, 33 Cal.2d 908, 937 [207 P.2d 17].)

III
Respondent claims that the stipulation for judgment is invalid because such an agreement is beyond the powers granted by law to the Upper San Gabriel Valley Municipal Water District, in that (a) the Upper District cannot contract to furnish water outside its boundaries and (b) the Upper District is not authorized to contract in a manner that would involve the use of public funds for private benefit.
[6] As to proposition (a), section 71611 of the Water Code provides "A district may sell water under its control, without preference, to cities, other public corporations and agencies, and persons, within the district for use within the district." Section 71612 of the Water Code provides "Whenever the board finds that there is a surplus of water above that which may be required by consumers within the district, the district may sell or otherwise dispose of such surplus water to any persons, public corporations or agencies, or other consumers." It is upon these sections that respondent relies as prohibiting the Upper San Gabriel Valley Municipal Water District from entering into the stipulation. These sections impose restrictions upon the sale of water under normal operating conditions. The litigation, stipulation and proposed judgment here under consideration have a much broader aspect. The action below raises issues as to the right of the district to water within the San Gabriel River system. Also the complaint asserts rights in the plaintiffs to water within such system paramount to the rights of the defendants therein named, including the defendant Upper San Gabriel Valley Municipal Water District; and, therefore, in a broad sense, questions the right of the district to function as such. Whatever limitations there may be on the district's power to supply other than certain enumerated areas with water, it is clear that if, in order to operate its project at all, water must be furnished to a prior claimant, the district possesses the implied power so to furnish the water. (City of Lodi v. East Bay Mun. Utility Dist., supra, 7 Cal.2d 316, 341.)
As to proposition (b), respondent asserts that the stipulation and proposed judgment is in violation of article IV, section 31, of the California Constitution, in that it authorizes *702 the use of public funds for private benefit. He claims in this regard that the Upper District is attempting to incur not only the primary obligation to furnish water or pay money to the Central Municipal, but has incurred and presumably will continue to incur substantial expense in connection with this litigation and the implementation of the stipulation for judgment to the direct benefit of the other defendants. We assume that respondent has reference to the provisions of paragraph 5 of the judgment wherein specific obligations are set forth dealing with the physical solution, and which impose certain obligations upon Upper District in the way of accounting, providing Make-up Water or to pay Central Municipal for the benefit of all Lower Area parties for the expense of reclaiming water or for the purchase of reclaimed water. Respondent does not make it clear as to how this provision of the Constitution should apply to the problem here. [7] This provision is a limitation upon the power of the Legislature to make or authorize the making of a gift of public funds for the benefit of a private person. [8a] The prime object and purpose of the stipulation and proposed judgment insofar as it relates to Upper District is to preserve to the district and its inhabitants the right to use waters within the San Gabriel River system. This obviously is a public purpose and is for the benefit of the district and its inhabitants, and the fact that it may benefit others is incidental. [9] It is well settled that funds directed toward a public purpose are not within the constitutional prohibition merely because of incidental benefits to individuals. (American Co. v. City of Lakeport, 220 Cal. 548, 556 [32 P.2d 622]; Patrick v. Riley, 209 Cal. 350, 357-358 [287 P. 455].) [10] Furthermore, the Legislature is vested with a large discretion in determining what is for the public good and what are public purposes for which public moneys can be rightfully expended and that discretion cannot be controlled by the courts, except when its action is clearly evasive. (People v. Standard Acc. Ins. Co., 42 Cal. App.2d 409, 414 [108 P.2d 923].) In addition, a contract of reimbursement has been entered into between the Upper San Gabriel Valley Municipal Water District (Upper District) and other defendants in the action below whereby Upper District will be reimbursed for expenses incurred by the latter pursuant to the obligations assumed by it under the terms of the stipulation and proposed judgment. Such contract is incorporated herein and is attached hereto as Appendix 3.
[8b] Under the circumstances here presented neither *703 the stipulation nor the proposed judgment violates article IV, section 31, of the California Constitution.

IV
[11] Respondent next urges that the stipulation for judgment is invalid as an unreasonable and arbitrary exercise of governmental power. He argues that whatever may be the scope of the power of municipal water districts to compromise lawsuits, that power, like any governmental power, cannot be exercised in a way that is unreasonable, arbitrary or capricious in its effect on private rights. He claims that paragraph 4 of the so-called "Declaration of Right" of the proposed stipulation for judgment indicates most clearly the arbitrariness and unreasonableness of this stipulation. He says that Lower Area parties are declared to have rights of unknown nature and scope in the water supply of the San Gabriel River system; but the substituted exchange for those rights  in essence the Upper District's obligation to make 98,415 acre-feet of water available annually to downstream users  runs to Lower Area parties and all other persons downstream from Whittier Narrows who receive or have rights in water of the San Gabriel River system. He asserts that these other persons include water users in the West Basin who are not represented in the action and who clearly would not be bound by any judgment entered therein. He claims that if such persons, in a subsequent action, successfully assert a right against Upper Area parties to receive water through Whittier Narrows, the water they would be entitled to receive would be deducted from the 98,415 acre-feet entitlement of the Lower Area parties, and thus the petitioner is attempting to relinquish the water rights of its inhabitants without ever ascertaining the nature and extent of those rights sufficiently to even make a contention as to their scope, and to accept in exchange a contractual obligation that, by its terms, could be reduced to an unknown amount by a successful claim against the Upper Area by other users of water from the San Gabriel River system.
In this contention, respondent has overlooked the fact that the quantity of 98,415 acre-feet of water which flows from the Upper Area through the Whittier Narrows to the Lower Area has been determined to be the average quantity of water per year to be expected, and this figure has been arrived at by constant study over a period of several years by competent and skilled engineers. The methods used to arrive at this figure cannot be said to be unreasonable, *704 arbitrary or capricious. Furthermore, it is not unreasonable to assume that, after prolonged litigation, the trial court would arrive at a figure substantially the same as that used by the parties to the stipulation and proposed judgment in their effort to arrive at a practical solution of their problem. It is also reasonable to assume that after such a prolonged and careful study of the hydrology of the area by the various water districts, water companies and municipal corporations, through their personnel, skilled engineers, and attorneys, they have accurately assessed the rights of other users, not parties to the action, so as to minimize the possibility of the loss of water to their inhabitants in the manner posed by respondent. We find nothing invalid, unreasonable, arbitrary or capricious in the provisions contained in the stipulation and proposed judgment.

V
Next, respondent urges that the stipulation for judgment is invalid because such an agreement is beyond the powers granted to the City of Long Beach by its charter.[2] He does not question the right of the board of water commissioners to bring and maintain the action below on behalf of the city without the authority of the electorate, even though a judgment rendered therein after a protracted and costly trial might result in a disposal in whole or in part of water rights claimed to be vested in the city. Subdivision (7) of section 217 of the charter gives the board of water commissioners the right "To sue and be sued in the name of said Board, and to exercise complete control over all litigation wherein it is involved, or which pertains to any matters within the jurisdiction of said Board; ..." (Italics added.) To require the *705 board to obtain the consent of two-thirds of the qualified voters of the city each time it became necessary to make some concession or compromise in litigation in which the board is involved would not only deprive the board of its right to exercise complete control over the litigation, as is granted by the provisions of subdivision (7) of section 217 of the charter, but would set up conditions which are unreasonable and unworkable. [12] The compromise and settlement of the action below, by means of a practical solution as posed by the stipulation, proposed judgment and contract of reimbursement is not such a disposal of water or water rights owned or controlled by the city as would require the consent of the voters of the city in order to give it vitality. The purpose of the action below and of the compromise and settlement of it is to secure water and water rights in gross to the inhabitants of the City of Long Beach, not to dispose of them. The provisions of section 216d of the Charter of the City of Long Beach have no application to the situation here and are not a bar to the board of water commissioners in proceeding to a reasonable compromise and settlement of the litigation, on behalf of the City of Long Beach.
[13] It is the policy of the law to discourage litigation and to favor compromise and voluntary settlements of doubtful rights and controversies, made either in or out of court. (People ex rel. Dept. Public Works v. Forster, 58 Cal.2d 257, 263 [23 Cal. Rptr. 582, 373 P.2d 630]; Potter v. Pacific Coast Lumber Co., 37 Cal.2d 592, 602-603 [234 P.2d 16]; Pettie v. Superior Court, 178 Cal. App.2d 680, 689 [3 Cal. Rptr. 267]; Hamilton v. Oakland School Dist., 219 Cal. 322, 329 [26 P.2d 296]; Estate of Green, 138 Cal. App.2d 211, 215 [292 P.2d 651].)
The efforts of the parties to the action pending in the trial court to compromise and settle their differences by entering into the stipulation for judgment is in full accord with the policy of the law, and we find no legal obstacle which would stand in the way of the parties entering into and being bound by their agreement of compromise as evidenced by such stipulation.
The stipulation and proposed judgment are incorporated herein and are attached as appendices 1 and 2.
Let the peremptory writ issue as prayed.
Wood, P.J., and Lillie, J., concurred.

*706 Appendix 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES
 BOARD OF WATER COMMISSIONERS OF THE CITY OF LONG |
 BEACH, a municipal corporation; CENTRAL BASIN |
 MUNICIPAL WATER DISTRICT, a municipal water |
 district; and CITY OF COMPTON, a municipal |
 corporation, |
 Plaintiffs, |
 vs. | No. 722,647
 |
 SAN GABRIEL VALLEY WATER COMPANY, a corporation; |
 AZUSA AGRICULTURAL WATER COMPANY, a corporation; |
 AZUSA VALLEY WATER COMPANY, a corporation; | STIPULATION
 CALIFORNIA CITIES WATER COMPANY, a corporation; > FOR
 CALIFORNIA WATER & TELEPHONE COMPANY, a | JUDGMENT
 corporation; COVINA IRRIGATING COMPANY, a |
 corporation; CROSS WATER COMPANY, a corporation; |
 EAST PASADENA WATER CO. LTD., a corporation; |
 GLENDORA IRRIGATING COMPANY, a corporation; |
 SOUTHERN CALIFORNIA WATER COMPANY, a corporation; |
 SUBURBAN WATER SYSTEMS, a corporation; SUNNY |
 SLOPE WATER CO., a corporation; VALLECITO WATER |
 CO., a corporation; CITY OF ALHAMBRA, a municipal |
 corporation; CITY OF ARCADIA, a municipal |
 corporation; CITY OF AZUSA, a municipal |
 corporation; CITY OF COVINA, a municipal |
 corporation; CITY OF EL MONTE, a municipal |
 corporation; CITY OF GLENDORA, a municipal |
 corporation; CITY OF MONROVIA, a municipal |
 corporation; CITY OF MONTEREY PARK, a municipal |
 corporation; CITY OF SOUTH PASADENA, a municipal |
 corporation; BALDWIN PARK COUNTY WATER DISTRICT, |
 a county water district; and SAN GABRIEL COUNTY |
 WATER DISTRICT, a county water district, |
 |
 Defendants, |
 |
 UPPER SAN GABRIEL VALLEY MUNICIPAL WATER |
 DISTRICT, a municipal water district, and |
 CALIFORNIA DOMESTIC WATER COMPANY, a corporation, |
 |
 Intervenors. |
*707 Plaintiffs Central Basin Municipal Water District, a municipal water district (herein sometimes referred to as Central Municipal); City of Long Beach, a municipal corporation, acting by and through the Board of Water Commissioners of the City of Long Beach; and City of Compton, a municipal corporation; and defendants City of Alhambra, a municipal corporation; City of Arcadia, a municipal corporation; City of Azusa, a municipal corporation; Azusa Agricultural Water Company, a corporation, sued herein as DOE 1; Azusa Valley Water Company, a corporation, for itself and as successor by merger to Azusa Irrigating Company, a corporation; Baldwin Park County Water District, a county water district; California Cities Water Company, a corporation (successor by merger to Columbia Land and Water Company, a corporation, and to San Dimas Water Company, a corporation, sued herein as DOE 3); California Water and Telephone Company, a corporation; City of Covina, a municipal corporation; Covina Irrigating Company, a corporation; Cross Water Company, a corporation, sued herein as DOE 2; East Pasadena Water Company, Ltd., a corporation, for itself and as successor by merger to California-Michigan Land and Water Company, a corporation; City of El Monte, a municipal corporation; City of Glendora, a municipal corporation; Glendora Irrigating Company, a corporation; City of Monrovia, a municipal corporation; City of Monterey Park, a municipal corporation; San Gabriel County Water District, a county water district; San Gabriel Valley Water Company, a corporation; Southern California Water Company, a corporation; City of South Pasadena, a municipal corporation; Suburban Water Systems, a corporation; Sunny Slope Water Company, a corporation; and Vallecito Water Company, a corporation; and intervening defendant Upper San Gabriel Valley Municipal Water District, a municipal water district (herein sometimes referred to as Upper District); and intervening defendant California Domestic Water Company, a corporation; stipulate and agree as follows:
1. A Judgment in the form attached hereto as Exhibit I may be made and entered by the Court in the above-entitled action.
2. The following facts, considerations and objectives among others, provide the basis for this Stipulation for Judgment:
(a) By their complaint plaintiffs seek a determination of the rights of the defendants, other than Upper District, *708 in and to the waters of the San Gabriel River System and further seek to restrain defendants, other than Upper District, from an alleged interference with the rights of plaintiffs and persons represented by Central Municipal in and to said waters.
(b) At the present time, and for some time prior to the commencement of this action, the water supply of the San Gabriel River System has been inadequate to supply the diversions and extractions of both plaintiffs and defendants other than Central Municipal and Upper District but including the persons represented by Central Municipal and by Upper District, and as a result said diversions and extractions have exceeded, and still exceed, the natural replenishment of the water supply of the San Gabriel River System.
(c) The parties recognize and agree that the natural outflow from the San Gabriel Valley to the Lower Area as defined in the Judgment has varied, and will vary from year to year, depending on the amount of precedent rainfall and other conditions.
(d) The parties recognize and agree that there is a need for a declaration of rights and a physical solution for the problems resulting from the inadequate and varying water supplies of the San Gabriel River System.
(e) The parties agree that the physical solution contained in said Judgment will bring about a fair division of the water of the San Gabriel River System as between plaintiffs and defendants other than Central Municipal and Upper District but including the persons represented by Central Municipal and by Upper District.
(f) The parties recognize that it may be necessary for defendants or some of them to use supplemental water in order to comply with the obligations imposed under said physical solution.
(g) Defendant Upper District is now a member unit of The Metropolitan Water District of Southern California, which will be supplied with water from sources in northern California under an existing contract with the State of California. Certain of the defendants not within the area of defendant Upper District are within the area of San Gabriel Valley Municipal Water District, which district also has contracted with the State of *709 California for delivery of water from sources in northern California. It is anticipated that the importation of this water will augment the natural supply of ground water within Upper Area as defined in the Judgment. Defendant Upper District intends to replenish the San Gabriel Valley with supplemental supplies.
3. The parties hereto hereby waive any and all Findings of Fact, Conclusions of Law, and any and all notice of the making or entry herein of the attached form of Judgment, and all rights of appeal, if any, from such Judgment.
4. Plaintiffs and defendants agree that during the period prior to entry of the attached form of Judgment, they will cooperate in endeavoring to collect such information as the Watermaster would obtain if the attached form of Judgment had been entered and the Watermaster had been appointed by the Court pursuant to paragraph 6 of the Judgment, which information is herein referred to as "said information." To that end, the parties hereto hereby agree that promptly following the complete execution of this stipulation by all parties, Upper District and Central Municipal shall each notify the other in writing as to the identity of the person who it expects will be nominated as the representative of Upper Area Parties or Lower Area Parties, as the case may be, under paragraph 6 of the Judgment. Upon receiving such notice, Upper District and Central Municipal shall each instruct its designated nominee that until the attached form of Judgment is entered and the Watermaster has been appointed pursuant to paragraph 6 of the Judgment he shall in cooperation with the other designated nominee do all things reasonably necessary to obtain such of said information as is available from the parties hereto or any public agency.
5. Judgment shall not be rendered pursuant hereto unless and until the execution of this stipulation by Central Basin Municipal Water District and by Upper San Gabriel Valley Municipal Water District shall have been validated by a decree or decrees rendered in a proceeding or proceedings instituted in a court of competent jurisdiction of the State of California, and either such decree or decrees shall have become final or both of said Districts shall have further stipulated that said Judgment shall be rendered.
6. This stipulation may be executed in counterparts (each counterpart being an exact copy or duplicate of the original) *710 and all counterparts collectively shall be considered as constituting one complete Stipulation for Judgment.
 DATED: February 10, 1965.
 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 LEONARD PUTNAM BOARD OF WATER COMMISSIONERS
 City Attorney OF THE CITY OF LONG BEACH
 CLIFFORD E. HAYES
 Principal Deputy City Attorney By /s/ FRED S. DEAN 
 City of Long Beach Its ____ President
 By /s/ CLIFFORD S. HAYES By /s/ HELEN L. PENLAND 
 Its ____ Secretary
 BURRIS & LAGERLOF 1800 East Wardlow Road
 STANLEY C. LAGERLOF Long Beach 7, California
 H. JESS SENECAL
 JACK T. SWAFFORD
 By /s/ STANLEY C. LAGERLOF 
 BURRIS & LAGERLOF CENTRAL BASIN MUNICIPAL
 STANLEY C. LAGERLOF WATER DISTRICT
 H. JESS SENECAL
 JACK T. SWAFFORD By /s/ MILO DELLMAN 
 By /s/ STANLEY C. LAGERLOF Its President
 By /s/ CARL FOSSETT 
 Its Secretary
 7439 East Florence Avenue
 Downey, California
 LLOYD A. BULLOCH CITY OF COMPTON
 City Attorney
 City of Compton By /s/ CHESTER R. CRAIN 
 /s/ LLOYD A. BULLOCH Its Mayor
 BURRIS & LAGERLOF 205 South Willowbrook Avenue
 STANLEY C. LAGERLOF Compton, California
 H. JESS SENECAL
 JACK T. SWAFFORD
 By /s/ STANLEY C. LAGERLOF 
*711 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 DON D. BERCU CITY OF ALHAMBRA
 City Attorney
 City of Alhambra
 By /s/ NORMA L. YOCUM 
 /s/ DON D. BERCU Its Mayor
 /s/ WILLIAM F. LONGLEY 
 City Auditor-Clerk
 TAYLOR & SMITH City Hall
 111 South First Street
 By /s/ EDWARD F. TAYLOR Alhambra, California
 JAMES A. NICKLIN CITY OF ARCADIA
 City Attorney
 City of Arcadia By /s/ DALE E. TURNER 
 /s/ JAMES A. NICKLIN Its Mayor
 City Hall
 SURR & HELLYER Arcadia, California
 By /s/ JOHN B. SURR 
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
 HARRY C. WILLIAMS CITY OF AZUSA
 City Attorney
 City of Azusa By /s/ LOUIS G. MEMMESHEIMER
 /s/ HARRY C. WILLIAMS Its Mayor
 City Hall
 TAYLOR & SMITH 213 East Foothill Boulevard
 Azusa, California
 By /s/ EDWARD F. TAYLOR 
 TAYLOR & SMITH AZUSA AGRICULTURAL WATER
 COMPANY
 By /s/ EDWARD F. TAYLOR 
 By /s/ HICKORY S. JACKSON 
 Its ____ President
 By /s/ D.H. McKELLAR 
 Its ____ Secretary
 18352 East Foothill Boulevard
 Azusa, California
*712 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 AZUSA VALLEY WATER COMPANY
 SURR & HELLYER
 By /s/ ELBERT B. GRIFFITTS 
 By /s/ JOHN B. SURR Its ____ President
 CLAYSON, STARK, ROTHROCK By /s/ IRA R. CALVERT 
 & MANN Its ____ Secretary
 By /s/ DONALD D. STARK 
 P.O. Box "W"
 Azusa, California
 BALDWIN PARK COUNTY WATER
 SURR & HELLYER DISTRICT
 By /s/ JOHN B. SURR 
 By /s/ ROY W. JUDD 
 CLAYSON, STARK, ROTHROCK Its ____ President
 & MANN
 By /s/ RALPH B. HELM 
 By /s/ DONALD D. STARK Its ____ Secretary
 14521 East Ramona Boulevard
 Baldwin Park, California
 CALIFORNIA CITIES WATER
 ALLARD, SHELTON & O'CONNOR COMPANY
 By /s/ DONALD R. O'NEILL 
 By /s/ L.A. SHELTON Its Vice President
 SURR & HELLYER By /s/ ROBERT W. BRUCE 
 By /s/ JOHN B. SURR Its Asst. Secretary
 CLAYSON, STARK, ROTHROCK
 & MANN P.O. Box 188
 San Dimas, California
 By /s/ DONALD D. STARK CALIFORNIA WATER & TELEPHONE
 COMPANY
 BACIGALUPI, ELKUS &
 SALINGER By /s/ W.J. HAYS 
 Its Vice President
 By /s/ TADINI BACIGALUPI 
 2020 Santa Monica Blvd.
 SURR & HELLYER Santa Monica, California
 By /s/ JOHN R. SURR 
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
*713 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 ALLARD, SHELTON & O'CONNOR CITY OF COVINA
 By /s/ L.A. SHELTON By /s/ OSCAR G. YAEGER 
 Its Mayor
 SURR & HELLYER
 City Hall
 By /s/ JOHN B. SURR Covina, California
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
 KERCKHOFF & KERCKHOFF COVINA IRRIGATING COMPANY
 By /s/ ANTON W. KERCKHOFF By /s/ VERNE JOBE 
 Its ____ President
 SURR & HELLYER
 By /s/ JOHN B. SURR By /s/ FAYE D. FERGUSON 
 Its ____ Secretary
 CLAYSON, STARK, ROTHROCK
 & MANN 146 East College Street
 Covina, California
 By /s/ DONALD D. STARK 
 GEORGE C. GILLETTE CROSS WATER COMPANY
 /s/ GEO. C. GILLETTE By /s/ JOHN FERRERO 
 Its ____ President
 By /s/ H.L. SMITH 
 Its ____ Secretary
 15825 East Main Street
 La Puente, California
 GRAY & MADDOX EAST PASADENA WATER
 COMPANY, LTD.
 By /s/ FRANK E. GRAY By /s/ CAMILLE A. GARNIER 
 Its ____ President
 SURR & HELLYER
 By /s/ JOHN B. SURR By /s/ ROGER G. ETTER 
 Its Assist. Secretary
 CLAYSON, STARK, ROTHROCK
 & MANN 269 South Rosemead
 Pasadena, California
 By /s/ DONALD D. STARK 
*714 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 JAMES A. NICKLIN CITY OF EL MONTE
 City Attorney
 City of El Monte By /s/ CHARLES E. WIGGINS 
 Its mayor
 /s/ JAMES A. NICKLIN 
 City Hall
 SURR & HELLYER El Monte, California
 By /s/ JOHN B. SURR 
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
 LEONARD A. SHELTON CITY OF GLENDORA
 /s/ LEONARD A. SHELTON By /s/ JOE M. FINKBINER 
 Its Mayor
 SURR & HELLYER
 City Hall
 By /s/ JOHN B. SURR Glendora, California
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
 ALLARD, SHELTON & O'CONNOR GLENDORA IRRIGATING COMPANY
 By /s/ L.A. SHELTON By /s/ C.F. GORDON 
 Its ____ President
 SURR & HELLYER
 By /s/ JOHN B. SURR By /s/ O.J. HAMMER 
 Its ____ Secretary
 CLAYSON, STARK, ROTHROCK 224 North Michigan Avenue
 & MANN Glendora, California
 By /s/ DONALD D. STARK 
 HOMER H. BELL CITY OF MONROVIA
 City Attorney
 City of Monrovia By /s/ ROY S. KROPKE 
 Its Mayor
 /s/ HOMER H. BELL 
 SURR & HELLYER
 City Hall
 By /s/ JOHN B. SURR Monrovia, California
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
*715 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 CHARLES R. MARTIN CITY OF MONTEREY PARK
 City Attorney
 City of Monterey Park By /s/ WILLIAM M. ERAMBERT 
 Its Mayor
 /s/ CHARLES R. MARTIN 
 City Hall
 TAYLOR & SMITH 320 West Newmark Avenue
 Monterey park, California
 By /s/ EDWARD F. TAYLOR 
 SURR & HELLYER SAN GABRIEL COUNTY WATER
 DISTRICT
 By /s/ JOHN B. SURR By /s/ ROBERT S. BRUMMETT 
 Its ____ President
 CLAYSON, STARK, ROTHROCK
 & MANN By /s/ LUPIE PETERS 
 By /s/ DONALD D. STARK Its ____ Secretary
 829 East Las Tunas Drive
 San Gabriel, California
 J.E. SKELTON SAN GABRIEL VALLEY WATER
 COMPANY
 /s/ J.E. SKELTON By /s/ M.E. MOSELEY 
 SURR & HELLYER Its ____ President
 By /s/ JOHN B. SURR By /s/ C.H. PALMER 
 Its ____ Secretary
 CLAYSON, STARK, ROTHROCK 11142 Garvey Avenue
 & MANN El Monte, California
 By /s/ DONALD D. STARK 
 O'MELVENY & MYERS SOUTHERN CALIFORNIA WATER
 COMPANY
 By /s/ LAUREN M. WRIGHT By /s/ PHILIP F. WALSH 
 SURR & HELLYER Its ____ President
 By /s/ JOHN B. SURR By /s/ W.C. WELMOR 
 Its ____ Secretary
 CLAYSON, STARK, ROTHROCK
 & MANN 11911 South Vermont Avenue
 Los Angeles 44, California
 By /s/ DONALD D. STARK 
*716 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 CHARLES R. MARTIN CITY OF SOUTH PASADENA
 City Attorney
 City of South Pasadena By /s/ BURTON E. JONES 
 Its Mayor
 /s/ CHARLES R. MARTIN 
 825 Mission Street
 SURR & HELLYER South Pasadena, California
 By /s/ JOHN B. SURR 
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK 
 FRANK E. GRAY SUBURBAN WATER SYSTEMS
 /s/ FRANK E. GRAY By /s/ CAMILLE A. GARNIER 
 Its ____ President
 SURR & HELLYER
 By /s/ JOHN B. SURR By /s/ C.H. DEITZ 
 Its ____ Secretary
 CLAYSON, STARK, ROTHROCK
 & MANN 16340 East Maplegrove street
 La Puente, California
 By /s/ DONALD D. STARK 
 HAHN & HAHN SUNNY SLOPE WATER COMPANY
 By /s/ ALLYN H. BARBER By /s/ ROBT. T. CLARY 
 Its ____ President
 By /s/ ______________________
 Its ____ Secretary
 1040 El Campo Drive
 Pasadena, California
*717 Attorneys
 (for the respective party listed Signature of Stipulating
 opposite and to the right of the Party and Its Designation of
 respective attorneys listed below) Mailing Address 
 SURR & HELLYER VALLECITO WATER COMPANY
 By /s/ JOHN B. SURR By /s/ CAMILLE A. GARNIER 
 Its ____ President
 CLAYSON, STARK, ROTHROCK
 & MANN
 By /s/ DONALD D. STARK By /s/ WM. ROBY 
 Its ____ Secretary
 749 South Ninth Avenue
 City of Industry, California
 STEARNS, GROSS AND MOORE
 CALIFORNIA DOMESTIC WATER
 COMPANY
 By /s/ THOMAS B. MOORE 
 By /s/ FRED M. ANDERSON 
 Its ____ President
 By /s/ CAMILLE A. GARNIER 
 Its ____ Secretary
 P.O. Box 1026, Perry Annex
 Whittier, California
 HELM & BUDINGER UPPER SAN GABRIEL VALLEY
 MUNICIPAL WATER DISTRICT
 BY /s/ RALPH B. HELM 
 By /s/ FRANK E. VACHON 
 Its ____ President
 By /s/ HOWARD H. HAWKINS 
 Its ____ Secretary
 11229 East Valley Boulevard
 El Monte, California

*718 Appendix 2

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES
 BOARD OF WATER COMMISSIONERS OF THE CITY OF LONG |
 BEACH, a municipal corporation; CENTRAL BASIN |
 MUNICIPAL WATER DISTRICT, a municipal water |
 district; and CITY OF COMPTON, a municipal |
 corporation, |
 Plaintiffs, |
 vs. | No. 722,647
 |
 SAN GABRIEL VALLEY WATER COMPANY, a corporation; |
 AZUSA AGRICULTURAL WATER COMPANY, a corporation; |
 AZUSA VALLEY WATER COMPANY, a corporation; |
 CALIFORNIA CITIES WATER COMPANY, a corporation; |
 CALIFORNIA WATER & TELEPHONE COMPANY, a |
 corporation; COVINA IRRIGATING COMPANY, a > JUDGMENT
 corporation; CROSS WATER COMPANY, a corporation; |
 EAST PASADENA WATER CO. LTD., a corporation; |
 GLENDORA IRRIGATING COMPANY, a corporation; |
 SOUTHERN CALIFORNIA WATER COMPANY, a |
 corporation; SUBURBAN WATER SYSTEMS, a |
 corporation; SUNNY SLOPE WATER CO., a |
 corporation; VALLECITO WATER CO., a corporation; |
 CITY OF ALHAMBRA, a municipal corporation; CITY |
 OF ARCADIA, a municipal corporation; CITY OF |
 AZUSA, a municipal corporation; CITY OF COVINA, |
 a municipal corporation; CITY OF EL MONTE, a |
 municipal corporation; CITY OF GLENDORA, a |
 municipal corporation; CITY OF MONROVIA, a |
 municipal corporation; CITY OF MONTEREY PARK, a |
 municipal corporation; CITY OF SOUTH PASADENA, a |
 municipal corporation; BALDWIN PARK COUNTY WATER |
 DISTRICT, a county water district; and SAN |
 GABRIEL COUNTY WATER DISTRICT, a county water |
 district, |
 Defendants, |
 |
 UPPER SAN GABRIEL VALLEY MUNICIPAL WATER |
 DISTRICT, a municipal water district, and |
 CALIFORNIA DOMESTIC WATER COMPANY, a |
 corporation, |
 |
 Intervenors. |
*719 The original complaint herein was filed by Plaintiffs on May 12, 1959, and an amended complaint was filed herein on June 8, 1961. Each Defendant in this action filed an answer to the amended complaint denying the material allegations therein. Heretofore, Upper San Gabriel Valley Municipal Water District, a municipal water district, and California Domestic Water Company, a corporation, have intervened in the action as Defendants. There has been filed herein a Stipulation for Judgment signed by all of the parties to this action.
After due examination and consideration of the pleadings, said Stipulation for Judgment and other documents and papers on file herein, it appears to the Court that:
(a) In bringing and maintaining this action, plaintiff Central Basin Municipal Water District, a municipal water district, has done so as a representative of and for the benefit of all owners of water rights within, all owners of land within, and all inhabitants of, the district, except to the extent that defendant California Domestic Water Company is representing itself.
(b) In intervening in this action, defendant Upper San Gabriel Valley Municipal Water District, a municipal water district, has done so as a representative of and for the benefit of all owners of water rights within, all owners of land within, and all inhabitants of, the district, except to the extent that other Defendants who are within the district are representing themselves.
(c) There is a need for a physical solution to the complex water problems which have given rise to this action.
(d) The physical solution embodied in this Judgment is a feasible, equitable and just resolution of the issues presented by the amended complaint and answers thereto on file herein, and it will bring about a fair division of the water supply of the San Gabriel River System between Upper Area and Lower Area, as those terms are hereinafter defined.
(e) On the basis of the Stipulation for Judgment filed herein and the consent of all Plaintiffs and Defendants it is in the interests of justice and in furtherance of the water policy of the State of California to proceed without trial and to make and enter this Judgment.
*720 Now, therefore, it is hereby ORDERED, ADJUDGED AND DECREED:

JURISDICTION 1. The Court has jurisdiction of the
 subject matter of this action and of the
 Upper Area Parties and Lower Area
 Parties, as those terms are hereinafter
 defined.
EXHIBITS[*] 2. The following Exhibits marked A and
 B, are attached to this Judgment and
 made a part hereof:
 (a) Exhibit A  Map entitled "Rio
 Hondo and San Gabriel River in
 Vicinity of Whittier Narrows Dam."
 (b) Exhibit B  Engineering Appendix.
DEFINITIONS 3. As used in this Judgment, the following
 terms shall have the meanings
 assigned to them:
 (a) Central Municipal  Central Basin
 Municipal Water District.
 (b) Upper District  Upper San Gabriel
 Valley Municipal Water District.
 (c) Lower Area Parties  the Plaintiffs,
 and all persons, firms and corporations,
 public or private, who are
 represented by Central Municipal.
 (d) Upper Area Parties  the Defendants,
 and all persons, firms and
 corporations, public or private, who
 are represented by Upper District.
 (e) Upper Area  the area (exclusive
 of the Raymond Basin and the portion
 of San Gabriel Mountains tributary
 thereto) wherein surface and sub-surface
 waters are tributary to Whittier
*721 Narrows upstream from the
 common boundary of Upper District
 and Central Municipal through Whittier
 Narrows.
 (f) Lower Area  the area which lies
 downstream from the common boundary
 of Central Municipal and Upper
 District through Whittier Narrows
 and which is included within the incorporated
 limits of the Plaintiffs.
 (g) Whittier Narrows  a gap between
 Merced Hills and Puente Hills shown
 on Exhibit A.
 (h) Montebello Forebay  the area
 designated as such on Exhibit A.
 (i) Export to Lower Area  water
 diverted from surface streams in
 Upper Area or pumped or developed
 from underground sources in Upper
 Area, and in either case conveyed by
 conduit through Whittier Narrows.
 (j) Subsurface flow  all water which
 passes as ground water through Whittier
 Narrows at the "narrowest section"
 as shown on Exhibit A.
 (k) Surface flow  all water other than
 Export to Lower Area and Subsurface
 Flow, which passes from Upper Area
 to Lower Area through Whittier
 Narrows.
 (l) Usable Water  all Surface Flow,
 Subsurface Flow and Export to
 Lower Area, but excluding:
 (1) that portion of Surface Flow,
 if any, which crosses the southerly
 boundary of Montebello Forebay as
 surface runoff less the amount of
 Surface Flow which has been caused
 to flow out of Montebello Forebay
 as surface runoff by any spreading
 of water in Montebello Forebay by
*722 or on behalf of Lower Area Parties,
 or any of them;
 (2) water imported by or on behalf
 of Lower Area Parties from outside
 of the watershed of the San Gabriel
 River System;
 (3) Reclaimed Water, as defined in
 subparagraph (o) herein, provided,
 however, that Reclaimed Water
 (other than that reclaimed by or on
 behalf of Lower Area Parties)
 which is percolated and commingled
 with ground water in Upper Area
 shall be deemed Subsurface Flow,
 Surface Flow, or Export to Lower
 Area as the case may be, when and
 if it passes through Whittier Narrows;
 (4) that portion, if any, of Export
 to Lower Area which in any Water
 Year after September 30, 1966, exceeds
 23,395 acre-feet;
 (5) Make-up Water, as defined in
 subparagraph (m) herein; and
 (6) any water whether flowing on
 the surface or beneath the surface
 of the ground which has passed any
 of the points of surface measurement
 in Whittier Narrows shown on
 Exhibit B and prior to its passing
 from Upper Area to Lower Area is
 intercepted and returned upstream
 by conduit or otherwise so that it
 could again pass any such points of
 measurement.
 (m) Make-up Water  water of usable
 quality for ground water recharge
 which is either (a) required to be delivered
 to Lower Area under terms
 of paragraph 5 of this Judgment, or
 (b) designated by the delivering party
 as a delivery to Lower Area in advance
*723 satisfaction of some possible
 future delivery requirement under
 terms of paragraph 5 of this Judgment.
 (n) Water Year  October 1 through
 the following September 30.
 (o) Reclaimed Water  water reclaimed
 from sewage generated in the
 watershed of the San Gabriel River
 System above Whittier Narrows.
DECLARATION 4. Lower Area Parties have rights in the
OF RIGHT water supply of the San Gabriel River
 System. The nature and extent of such
 rights is not known; however, Lower
 Area Parties and all other persons downstream
 from Whittier Narrows who receive
 water from the San Gabriel River
 System or have rights in and to such
 water, shall have, as against Upper Area
 Parties and all other pumpers of water
 in the San Gabriel Valley, a right to
 receive from Upper Area an average
 annual usable supply of ninety-eight
 thousand four hundred fifteen (98,415)
 acre-feet of water over a long-term
 period of normal rainfall derived as set
 forth in Exhibit B, consisting of Surface
 Flow, Subsurface Flow, Export to
 Lower Area and Make-up Water. If in
 the future a court of competent jurisdiction
 shall decree that any person downstream
 from Whittier Narrows within
 Central and West Basin Water Replenishment
 District who is not bound
 by this Judgment, shall have, as against
 Upper Area Parties and substantially all
 other pumpers in the San Gabriel
 Valley, a right to receive from Upper
 Area a stated amount of usable supply
 consisting of Surface Flow, Subsurface
 Flow, Export to Lower Area or Make-up
 Water, which right arose out of and is
 based upon the ownership of land or the
*724 production of water downstream from
 Whittier Narrows and within Central
 and West Basin Water Replenishment
 District, then and in that event the
 stated amount of such right so decreed
 shall not increase the declared right as
 set forth in this paragraph 4; and the
 receipt of water from Upper Area by
 such person in such stated amount or
 portion thereof, consisting of Surface
 Flow, Subsurface Flow, Export to Lower
 Area or Make-up Water, shall be deemed
 a partial satisfaction of such declared
 right.
PHYSICAL (5) In recognition of the complexities of
SOLUTION annual supply and demand and variations
 in the components thereof, the
 Court hereby declares the following
 physical solution to be a fair and equitable
 basis for satisfaction of the declared
 right set forth in paragraph 4
 hereof. Compliance with this paragraph
 5 shall constitute full and complete
 satisfaction of said declared right.
ANNUAL (a) It is determined that the amount
AVERAGE of Lower Area average annual entitlement
ENTITLEMENT to Usable Water is ninety-eight
 thousand four hundred fifteen (98,415)
 acre-feet.
 (b) The outflow of water from Upper
 Area through Whittier Narrows to
 Lower Area has varied from year to
 year and will vary from year to year
 in the future depending on changing
 conditions of supply and demand;
 and, as to any Water Year the
 average annual rainfall for the San
 Gabriel Valley during the ten (10)
 consecutive Water Years ending with
 that Water Year is a reasonable basis
 for determining the entitlement of
 Lower Area to Usable Water for such
 Water Year.
*725 DETERMINATION (c) The rainfall in each Water Year
OF RAINFALL for the San Gabriel Valley shall be
 determined by application of the procedures
 described in Exhibit B.
RAINFALL (d) The quantity of water which
ADJUSTMENT Lower Area is entitled to receive in
TABLE any Water Year (hereinafter called
 Lower Area Annual Entitlement)
 shall be determined in accordance with
 the following table,[**] except that no
 determination of Lower Area Annual
 Entitlement shall be made for the last
 year of any Long-term Accounting
 Period as hereinafter defined.
DETERMINATION (e) The difference between the aggregate
OF ACCRUED water entitlements determined as
DEBIT OR provided in this judgment and the
CREDIT aggregate of Usable Water and delivered
 Make-up Water shall be computed
 as of the end of each Water
 Year. Any excess of water entitlements
 over the quantity of Usable
 Water and Make-up Water received
 by Lower Area after September 30,
 1963, is hereinafter referred to as
 Accrued Debit of Upper Area. Any
 excess of Usable Water and Make-up
 Water received by Lower Area after
 September 30, 1963, over water entitlements,
 is hereinafter referred to
 as Accrued Credit of Upper Area.
ACCRUED (f) If at the end of any Water Year
DEBIT it is determined pursuant to subparagraph
 (e) of this paragraph 5 that
 there is an Accrued Debit of Upper
 Area, then Upper District shall cause
 Make-up Water to be delivered to
 Lower Area during the following
 Water Year in an amount not less
 than the sum of (1) one-third of such
 Accrued Debit of Upper Area, and
*726 TABLE A
 LOWER AREA ANNUAL ENTITLEMENT
 BASED ON 10-YEAR AVERAGE RAINFALL
 FOR SAN GABRIEL VALLEY
 (In Acre-feet)
-----------------------------------------------------------------------
Inches
 of
Rainfall 0 .1 .2 .3 .4 .5 .6
-----------------------------------------------------------------------
 14 64,200 64,900 65,700 66,500 67,200 68,000 68,700
-----------------------------------------------------------------------
 15 71,800 72,600 73,400 74,100 74,900 75,600 76,400
-----------------------------------------------------------------------
 16 79,500 80,200 81,000 81,800 82,600 83,300 84,000
-----------------------------------------------------------------------
 17 87,100 87,900 88,700 89,400 90,200 91,000 91,500
-----------------------------------------------------------------------
 18 94,800 95,300 96,200 96,900 97,600 98,300 98,800
-----------------------------------------------------------------------
 19 101,400 102,000 102,700 103,300 103,900 104,500 105,100
-----------------------------------------------------------------------
 20 107,600 108,200 108,800 109,400 110,100 110,700 111,300
-----------------------------------------------------------------------
 21 113,700 114,300 115,000 115,600 116,200 116,800 117,400
-----------------------------------------------------------------------
 22 119,900 120,400 121,000 121,600 122,200 122,700 123,300
-----------------------------------------------------------------------
 23 125,500 126,100 126,700 127,200 127,800 128,400 128,900
-----------------------------------------------------------------------
 24 131,200 131,700 132,200 132,700 133,100 133,700 134,100
-----------------------------------------------------------------------
-----------------------------------
Inches
 of
Rainfall .7 .8 .9
-----------------------------------
 14 69,500 70,300 71,100
-----------------------------------
 15 77,200 77,900 78,700
-----------------------------------
 16 84,800 85,600 86,400
-----------------------------------
 17 92,500 93,200 94,000
-----------------------------------
 18 99,500 100,100 100,800
-----------------------------------
 19 105,700 106,300 107,000
-----------------------------------
 20 111,900 112,500 113,100
-----------------------------------
 21 118,100 118,600 119,300
-----------------------------------
 22 123,900 124,400 125,000
-----------------------------------
 23 129,500 130,100 130,600
-----------------------------------
 24 134,700 135,100 135,600
-----------------------------------
*727 (2) that portion, if any, of such
 Accrued Debit of Upper Area over
 25,000 acre-feet which remains after
 deducting said one-third. If Upper
 District shall fail to deliver Make-up
 Water as next above provided and
 Plaintiffs shall have diligently pursued
 their legal and equitable remedies
 to cause Upper District to so deliver,
 and either: (1) it shall be finally
 adjudged that Upper District is not
 obligated to so deliver, or (2) it shall
 appear that Upper District will not
 thereafter deliver Make-up Water,
 then Defendants and any successor or
 successors in interest by title to a
 Defendant's water right in Upper
 Area shall be obligated to so deliver
 Make-up Water. The provisions of
 this paragraph are subject to the provisions
 of paragraph 5(h) below.
ACCRUED (g) If at the end of any Water Year
CREDIT it is determined pursuant to subparagraph
 (e) of this paragraph 5 that
 there is an Accrued Credit of Upper
 Area, then there shall be no obligation
 to deliver Make-up Water to Lower
 Area during the following Water
 Year.
LONG-TERM (h) Following September 30, 1963,
ACCOUNTING a Long-term Accounting shall be made
 from time to time but not sooner than
 at the end of 15 Water Years, nor
 later than 25 Water Years after September
 30, 1963, or after the last such
 accounting, whichever is later. A
 Long-term Accounting shall be made
 sooner than said 25-year period whenever
 the average annual rainfall in the
 San Gabriel Valley for a period of 15
 Water Years or more after September
 30, 1963, or after the last such accounting,
 whichever is later, is at least
 18 inches but not more than 19 inches.
*728 In making such Long-term Accounting
 for any such period (herein called
 Long-term Accounting Period), the
 aggregate of all Usable Water and
 Make-up Water received by Lower
 Area during such period shall be determined
 and (a) there shall be
 deducted from said aggregate the
 amount of Make-up Water, if any, delivered
 during such period by reason
 of the existence of an Accrued Debit
 of Upper Area at the end of the immediately
 preceding Long-term Accounting
 Period, or (b) there shall be
 added to said aggregate the amount
 of any Accrued Credit of Upper Area
 determined to exist at the end of the
 immediately preceding Long-term Accounting
 Period. The net aggregate
 amount of Usable Water and Make-up
 Water so computed shall be compared
 to the result to be obtained by (1)
 multiplying the 98,415 acre-feet of
 water to be received by Lower Area
 as its average annual usable supply
 by the number of Water Years in the
 Long-term Accounting Period, and
 (2) adjusting the product by the percentage
 by which the average annual
 rainfall (to the nearest one hundredth
 of an inch) for the Long-term Accounting
 Period involved exceeds or is less
 than 18.52 inches. (i.e.:
 98,415 X (number of Water Years
 in Period) X
 (average rainfall for the Period).)
 _______________________________
 18.52
 If as a result of such comparison it
 is determined that there is a deficiency
 in the net aggregate amount of Usable
 Water and Make-up Water received
 during the Long-Term Accounting
 Period, then such deficiency shall be
*729 compensated in the following three
 Water Years by delivery of Make-up
 Water to Lower Area in an amount
 not less than one-third of such deficiency
 in the first following Water
 Year and not less than one-half of the
 balance within the second following
 Water Year. If it is determined as a
 result of such comparison that there is
 an excess of net aggregate Usable
 Water and Make-up Water received,
 then the amount of such excess shall be
 carried forward as an Accrued Credit
 of Upper Area.
MAKE-UP (i) Make-up Water may be delivered
WATER by any one or more of the following
DELIVERY means:
 SURFACE FLOW DELIVERY
 (1) By causing water other than
 Reclaimed Water to flow on the
 surface into Montebello Forebay by
 any means and from any source,
 provided that such deliveries shall
 be at such rates or flows and at such
 times as may be scheduled by the
 Watermaster.
 RECLAIMED WATER CREDIT
 (2) By paying to Central Municipal
 for the benefit of all Lower Area
 Parties the total amount or any
 portion of the total amount which
 Central and West Basin Water
 Replenishment District or any
 Plaintiff shall have expended in reclaiming
 water or for the purchase
 of Reclaimed Water in the preceding
 Water Year, and which
 water when so reclaimed or purchased
 shall have been passed
 through Whittier Narrows to Lower
 Area. Upon written request made
 by Upper District not later than
*730 three months after the end of a
 Water Year, Central Municipal
 shall give a written notice to Upper
 District and the Watermaster of
 the total number of acre-feet of such
 Reclaimed Water so reclaimed or
 purchased during the preceding
 Water Year and of the cost per
 acre-foot therefor at the existing
 Whittier Narrows Water Reclamation
 Plant for reclamation of waste
 water, and at any future additions
 thereto, and payment therefor at
 said cost, or costs, may be made not
 later than one year after receipt of
 such written notice. Such payment
 shall be made for the total production
 of Reclaimed Water from the
 existing plant in the preceding
 Water Year before Upper District
 shall be entitled to make payment
 for all, or any portion of, Reclaimed
 Water produced in that year by any
 future addition to that plant. Such
 payment by Upper District on behalf
 of Defendants shall be deemed
 a delivery of Make-up Water equal
 to the quantity of Reclaimed Water
 for which the expenditure of a like
 sum would have paid at the cost,
 or costs, per acre-foot so paid for
 such Reclaimed Water. In no event,
 however, shall any payment by
 Upper District under this subparagraph
 (i) (2) be deemed a
 delivery of Make-up Water in excess
 of 14,735 acre-feet in any Water
 Year during which the amount of
 Make-up Water required to be
 furnished by Upper Area is available
 to it at ground water replenishment
 rates for delivery to Lower
 Area, except with the prior written
 consent of Plaintiffs. Except with
*731 the consent of Plaintiffs, no payment
 by Upper District under this
 subparagraph (i) (2) may be
 designated as advance satisfaction
 of some possible future delivery requirement.
 DIRECT DELIVERY
 (3) By delivering, or causing to be
 delivered, water to any of Lower
 Area Parties with consent of Plaintiffs
 for use in Lower Area.
WATER (j) It is further determined and
RIGHTS adjudicated that the obligations provided
BOUND above in subparagraphs (f) and
 (h) of this paragraph 5 for each Defendant
 shall constitute and be a
 servitude upon the existing water
 rights of each Defendant in and to
 the water supply of the San Gabriel
 River System upstream from Lower
 Area and shall run with and forever
 bind said water rights for the benefit
 of the water rights of Lower Area
 Parties.
TRANSFER OF (k) If any Defendant, other than
WATER RIGHTS Upper District, shall desire to transfer
 all or any of its said water rights
 to a person, firm or corporation, public
 or private, who or which is not then
 bound by this Judgment as a Defendant,
 such Defendant shall as a
 condition to being discharged as hereinafter
 provided cause such transferee
 to appear in this action and file a valid
 and effective express assumption of
 the obligations imposed upon such Defendant
 under this Judgment as to
 such transferred water rights. Such
 appearance and assumption of obligations
 shall include the filing of a
 designation of the address to which
 shall be mailed all notices, requests,
*732 objections, reports and other papers
 permitted or required by the terms of
 this Judgment.
 If any Defendant shall have transferred
 all of its said water rights and
 each transferee not theretofore bound
 by this Judgment as a Defendant shall
 have appeared in this action and filed
 a valid and effective express assumption
 of the obligations imposed upon
 such Defendant under this Judgment
 as to such transferred water rights,
 such transferring Defendant shall
 thereupon be discharged from all obligations
 hereunder. If any Defendant
 other than Upper District shall cease
 to own any rights in and to the water
 supply of the San Gabriel River
 System upstream from Lower Area,
 and shall have caused the appearance
 and assumption provided for in the
 third preceding sentence with respect
 to each voluntary transfer, then upon
 application to this Court and after
 notice and hearing such Defendant
 shall thereupon be relieved and discharged
 from all further obligations
 hereunder. Any such discharge of any
 Defendant hereunder shall not impair
 the aggregate rights of Lower Area
 Parties or the responsibility hereunder
 of the remaining Defendants
 or any of the successors.
WATERMASTER 6. A Watermaster comprised of three
APPOINTMENT persons to be nominated as hereinafter
 provided shall be appointed by and serve
 at the pleasure of and until further
 order of this Court. One shall be a representative
 of Upper Area Parties nominated
 by and through Upper District,
 one shall be a representative of Lower
 Area Parties nominated by and through
 Central Municipal, and one shall be
*733 jointly nominated by Upper District and
 Central Municipal. If a dispute arises
 in choosing the joint appointee, the
 Court shall make the appointment. If
 Central Municipal or Upper District
 shall at any time or times nominate a
 substitute appointee in place of the appointee
 last appointed to represent
 Lower Area Parties, in the case of
 Central Municipal, or to represent
 Upper Area Parties, in the case of
 Upper District, or if Central Municipal
 and Upper District shall at any time or
 times jointly nominate a substitute appointee
 in place of the joint appointee
 last appointed, such substitute appointee
 shall be appointed by the Court in lieu
 of such last appointee or joint appointee.
 Each such nomination shall be made in
 writing, served upon the other parties to
 this action and filed with the Court. The
 Watermaster when so appointed shall
 administer and enforce the provisions of
 this Judgment and the instructions and
 subsequent orders of this Court.
POWERS 7. The Watermaster shall have the
AND following powers and duties and shall
DUTIES take all steps necessary to make the
 following determinations for each Water
 Year promptly after the end of such
 Water Year:
 (a) the amount of Surface Flow,
 (b) the amount of Subsurface Flow,
 (c) the amount of Export to Lower
 Area,
 (d) the amount of water which
 passed as Surface Flow or Subsurface
 Flow across the boundary between
 Upper Area and Lower Area through
 Whittier Narrows and which was imported
 by or on behalf of Lower Area
 Parties from outside of the watershed
*734 of the San Gabriel River System above
 Whittier Narrows,
 (e) the amount and quality of Reclaimed
 Water reclaimed by or on behalf
 of Lower Area,
 (f) the total amount of Make-up
 Water delivered to Lower Area, together
 with the respective amounts
 delivered by each method specified in
 paragraph 5 of this Judgment,
 (g) the amount of Usable Water received
 by Lower Area,
 (h) the amount of local storm inflow,
 originating in Lower Area, to the
 channel of each of Rio Hondo and San
 Gabriel River within Montebello
 Forebay,
 (i) the surface outflow from Montebello
 Forebay in the channel of each
 of the Rio Hondo and San Gabriel
 River,
 (j) the number of inches of depth of
 average rainfall in the San Gabriel
 Valley,
 (k) the average annual rainfall in
 the San Gabriel Valley for the ten
 consecutive Water Years just ended,
 (l) Lower Area Annual Entitlement
 or the entitlement for the Long-term
 Accounting Period, determined pursuant
 to subparagraph (d) or (h),
 respectively, of paragraph 5 of this
 Judgment,
 (m) Accrued Debit of Upper Area,
 if any, or Accrued Credit of Upper
 Area, if any, as it exists at the end of
 such Water Year, and
 (n) the amount, if any, of Make-up
 Water which Upper District is obligated
 to deliver during the following
 Water Year.
*735 DETERMINATIONS 8. Each of the above required determinations
TO BE BASED ON shall be based on and conform to
EXHIBIT B the procedures specified in this Judgment
 and in Exhibit B insofar as said
 exhibit provides a procedure.
REPORTS 9. The Watermaster shall report to the
MEASUREMENTS Court and to each party in writing at
AND DATA the same time and not more than five
 months after the end of each Water Year
 the determination required by paragraph
 7 above.
 The Watermaster shall cause to be
 installed and maintained in good working
 order such measuring devices in
 Whittier Narrows and elsewhere as are
 necessary or required and not otherwise
 available for the making of the determinations
 required by paragraph 7 above.
 The Watermaster shall collect and
 assemble from each of the parties, and
 the parties shall make available to the
 Watermaster, such records, reports and
 other data as may reasonably be required
 in the making of the determinations
 required of the Watermaster under
 paragraph 7 above. All records, reports
 and data received, maintained or compiled
 by the Watermaster shall be open
 to inspection by any party or its representative.
OBJECTIONS 10. Any party who objects to any determination
 made by the Watermaster
 pursuant to paragraph 7 above, may
 make such objection in writing to the
 Watermaster within thirty (30) days
 after the Watermaster gives the required
 written notice of such determination.
 Within thirty (30) days after expiration
 of the time within which objection
 may be made to such determination, the
 Watermaster shall consider all objections
 thereto and shall amend, modify or
*736 affirm the determination and give notice
 thereof at the same time to all parties
 and shall file a copy of such final determination
 with the Court. If the Watermaster
 denies any objection in whole or
 in part, the party whose objection was
 so denied may within thirty (30) days
 after service of the final determination
 upon it, make written objection to such
 denial by filing its objections with the
 Court after first mailing a copy of such
 objections to the Watermaster and to
 each party, and such party shall bring
 its objections on for hearing before the
 Court upon notice and motion and at
 such time as the Court may direct. If
 the Watermaster shall change or modify
 any determination, then any party may
 within fifteen (15) days after service
 of such final determination upon it
 object to such change or modification by
 following the procedure prescribed
 above in the case of a denial of an
 objection to the first determination. If
 objection to a final determination is filed
 with the Court as herein provided and
 brought on for hearing, then such final
 determination may be confirmed or
 modified in whole or in part as the Court
 may deem proper.
CHANGE IN 11. If the Watermaster shall deem it
METHOD OF advisable to make a change in the
MEASUREMENT method of making any measurement required
 under the terms of this Judgment,
 the Watermaster shall notify all parties
 of such proposed change, and if within
 sixty (60) days of such notification no
 party shall file its written objections to
 such change with the Watermaster, the
 Watermaster may put such proposed
 change into effect. If, however, any party
 files its written objection to the proposed
 change it shall by notice of
 motion filed not later than fifteen (15)
*737 days after the expiration of said 60-day
 period and served on the Watermaster
 and all parties bring its objection on for
 hearing before the Court at such time
 as the Court may direct, and the Court
 shall rule on whether the Watermaster
 may make such proposed change.
BUDGET 12. In addition to the above-specified
 administrative powers and duties, the
 Watermaster shall prepare a tentative
 budget for each Water Year, stating the
 estimated expense for discharging the
 duties of the Watermaster set forth in
 this Judgment. The Watermaster shall
 mail a copy of the tentative budget to
 each of the parties at the same time at
 least sixty (60) days before the beginning
 of each Water Year. However,
 with respect to the first Water Year
 following the entry of this Judgment,
 the tentative budget shall be mailed not
 later than one hundred and twenty
 (120) days from the entry of this
 Judgment. If any party has an objection
 to a tentative budget, or any suggestions
 with respect thereto, that party
 shall present the same in writing to the
 Watermaster within fifteen (15) days
 after service of the tentative budget
 upon it. If no objections are received,
 the tentative budget shall become the
 final budget. If objections to the tentative
 budget are received, the Watermaster
 shall, within fifteen (15) days
 after the expiration of the time for
 presenting objections, consider all such
 objections, prepare a final budget, and
 mail a copy thereof to each party, together
 with a statement of the amount
 assessed, if any, to each party, computed
 as provided in paragraph 13. If the
 Watermaster denies any objection in
 whole or in part, the party whose objection
*738 was so denied may, within fifteen
 (15) days after service of the final
 budget upon it, make written objection
 to such denial by filing its objections
 with the Court after first mailing a copy
 of such objections to each party, and
 such party shall bring its objections on
 for hearing before the Court upon notice
 and motion and at such time as the Court
 may direct. If the Watermaster makes
 a change in the tentative budget, then
 any party may within fifteen (15) days
 after service of the final budget upon it
 object to any such change by following
 the procedure prescribed above in the
 case of a denial of an objection to the
 tentative budget. If objection to the
 final budget is filed with the Court as
 herein provided and brought on for
 hearing, then such final budget may be
 confirmed or adjusted in whole or part
 as the Court may deem proper.
FEES AND 13. The fees, compensation and expenses
EXPENSES of the Watermaster hereunder shall be
 borne by the parties in the following
 proportions: 50% by Upper District,
 41.2% by Central Municipal, 7.125%
 by the City of Long Beach, and 1.675%
 by the City of Compton, or such other
 division among the Plaintiffs as they
 may agree upon in writing and file with
 the Watermaster.
 Payment of the amount assessed to a
 party, whether or not subject to adjustment
 by the Court as provided in paragraph
 12, shall be paid on or prior to
 the beginning of the Water Year to
 which the final budget and statement
 of assessed costs is applicable. If such
 payment by any party is not made on or
 before said date, the Watermaster shall
 add a penalty of 5% thereof to such
 party's statement. Payment required
 of any party hereunder may be enforced
*739 by execution issued out of this Court,
 or as may be provided by order hereinafter
 made by this Court. All such payments
 and penalties received by the
 Watermaster shall be expended for the
 administration of this Judgment. Any
 money remaining at the end of any
 Water Year shall be available for use
 in the following Water Year.
SUCCESSOR 14. If a public agency or district shall
OF UPPER be formed hereafter which shall include
DISTRICT the present area of Upper District and
 shall have ability equal to or greater
 than that which Upper District now has
 to perform the obligations under this
 Judgment, and shall appear in this
 action and file a valid and effective assumption
 of such obligations, then
 Upper District upon application to this
 Court, and after notice and hearing,
 shall thereupon be relieved and discharged
 from all further obligations
 hereunder.
CONTINUING 15. Full jurisdiction, power and authority
JURISDICTION is retained and reserved by the Court
OF THE COURT for the purpose of enabling the Court
 upon application of any party by motion
 and upon at least thirty (30) days notice
 thereof, and after hearing thereon (i) to
 make such further or supplemental
 orders or directions as may be necessary
 or appropriate for the construction, enforcement
 or carrying out of this Judgment,
 and (ii) to modify, amend or
 amplify any of the provisions of this
 Judgment whenever substantial changes
 or developments affecting the physical,
 hydrological or other conditions dealt
 with herein may, in the Court's opinion,
 justify or require such modification,
 amendment or amplification.
 If at any time Plaintiffs and at least
 two-thirds of the Defendants including
*740 any two of the cities of Alhambra, Azusa
 and Monterey Park, shall file with the
 Court a written stipulation (i) that
 henceforth in determining any one or
 more of the component parts of Usable
 Water received by Lower Area in any
 Water Year, the Watermaster shall not
 use the method specified in this Judgment
 but shall use instead a new,
 different or altered method as specified
 and described in such stipulation, and
 (ii) that such new, different or altered
 method or methods shall be applied to
 redetermine the average annual amount
 of Usable Surface Flow, Subsurface
 Flow and Export to Lower Area which
 Lower Area received each Water Year
 during the period October 1, 1934 to
 September 30, 1959, referred to as the
 base period, and that on the basis of such
 redetermination the Court may modify
 paragraphs 4 and 5 of this Judgment to
 establish a new and different water entitlement
 and yearly adjustment thereto
 which shall thereafter control, then and
 in that event, after hearing pursuant to
 motion and notice to all parties, held at
 such time as the Court may direct, the
 Court may deny the motion or it may
 grant it and (a) approve the future use
 of the stipulated new, different or
 altered method or methods, by the
 Watermaster, and (b) by use of the
 stipulated new, different or altered
 method or methods, redetermine the
 average annual amount of Usable
 Surface Flow, Subsurface Flow and Export
 to Lower Area received each Water
 Year during the base period, and on the
 basis thereof modify paragraphs 4 and
 5 of this Judgment to provide for a new
 and different water entitlement and
 yearly adjustment thereto, which modifications
 shall be effective and control
 commencing with the Water Year following
*741 the entry of the order so modifying
 paragraphs 4 and 5.
REPORT OF 16. Every transfer of any of those water
TRANSFER rights of Defendants which are the subject
OF WATER of Paragraph 5(j) of this Judgment,
RIGHTS whether such transfer is voluntary
 or involuntary, shall be reported
 promptly in writing by the transferor to
 the Watermaster; and the Watermaster
 shall give prompt written notice of such
 transfer to each party and to each
 transferee involved in every other
 transfer of any of those water rights.
 Such report by the transferor and notice
 by the Watermaster shall contain the
 following information as to each such
 transfer:
 (a) The identity of the transferor;
 (b) The identity of the transferee;
 (c) The effective date of the transfer;
 (d) A brief description of the document
 by which such transfer is
 made, and the recording data, if
 any;
 (e) A statement as to whether the
 transfer was voluntary or involuntary;
 (f) A statement whether or not after
 such transfer the transferor still
 has or claims to have any of the
 water rights which are the subject
 of Paragraph 5(j) of this
 Judgment.
NOTICES 17. All notices, requests, objections,
 reports and other papers permitted or
 required by the terms of this Judgment
 shall be given or made by written document
 and shall be served by mail on each
 party and on each transferee of water
 rights who has appeared and filed the
 assumption of obligations required by
*742 paragraph 5(k) of this Judgment, and
 where required or appropriate, on the
 Watermaster. For all purposes of this
 paragraph the mailing address of each
 party shall be that set forth below its
 signature to the Stipulation for Judgment,
 and the mailing address of each
 transferee of water rights shall be that
 set forth in the appearance and assumption
 of obligations required by paragraph
 5(k) of this Judgment, until
 changed as provided below. No further
 notice of any kind as to any matter
 arising hereunder, including notice to
 attorneys of record for any party or
 such transferee, need be given, made
 or served.
 If any party or any such transferee
 of water rights shall desire to change
 its designation of mailing address, it
 shall file a written notice of such change
 with the clerk of this court and shall
 serve a copy thereof by mail on the
 Watermaster. Upon the receipt of any
 such notice the Watermaster shall
 promptly give written notice thereof to
 each party and to each transferee of
 water rights.
EFFECTIVE 18. The rights decreed and the obligations
DATE imposed by this Judgment shall be
 effective October 1, 1963, and shall
 accrue from that date.
COSTS 19. None of the parties shall recover any
 costs from any other party.
 Dated: _________________________, 1965.
 ___________________________________
 Judge

*743 Appendix 3

REIMBURSEMENT CONTRACT
THIS CONTRACT is made by and between UPPER SAN GABRIEL VALLEY MUNICIPAL WATER DISTRICT, herein called "Upper District", and the cities of ALHAMBRA, ARCADIA, AZUSA, COVINA, EL MONTE, GLENDORA, MONTEREY PARK, MONROVIA, SOUTH PASADENA, and WHITITER [sic]; BALDWIN PARK COUNTY WATER DISTRICT, and SAN GABRIEL COUNTY WATER DISTRICT; AZUSA AGRICULTURAL WATER COMPANY, AZUSA VALLEY WATER COMPANY, CALIFORNIA CITIES WATER COMPANY, CALIFORNIA DOMESTIC WATER COMPANY, CALIFORNIA WATER & TELEPHONE COMPANY, COVINA IRRIGATING COMPANY, CROSS WATER COMPANY, EAST PASADENA WATER COMPANY, LTD., GLENDORA IRRIGATING COMPANY, SAN GABRIEL VALLEY WATER COMPANY, SOUTHERN CALIFORNIA WATER COMPANY, SUBURBAN WATER SYSTEMS, SUNNYSLOPE WATER COMPANY, and VALLECITO WATER COMPANY, corporations, herein collectively called "Pumpers."

RECITALS
1. The Action. In the matter of Board of Water Commissioners of the City of Long Beach, et al. v. San Gabriel Valley Water Company, et al., (L.A. Superior Court No. 722,647) the water rights of substantially all major water producers in the main San Gabriel Valley are sought to be restricted.
2. Judgment. The parties named above, except City of Whittier, are concurrently executing a Stipulation that a Judgment substantially in the form annexed hereto shall be rendered and it is anticipated that such Judgment will be rendered in the action.
3. Public Interest in Settlement. It is in the best interests of the Pumpers and in the best interests of the water users and taxpayers within the corporate boundaries of those Pumpers which are public agencies, of the consumers of those Pumpers which are utilities or mutual water companies, and of all residents and taxpayers of Upper District, that said action be settled and disposed of in accordance with the terms of said Judgment in order to preserve the water supplies within Upper Area.

DEFINITIONS
1. "Contract Costs"  All costs hereafter paid by Upper District:
(a) In providing Make-up Water under the terms of the judgment. In computing such costs of providing *744 Make-up Water, any cost which Upper District shall pay which it would have paid even though it had not provided Make-up Water shall be excluded; and particularly but not exclusively, no amount which shall be paid to The Metropolitan Water District of Southern California as a condition to any past or future annexation shall be deemed a cost of providing Make-up Water. Such costs may include interest paid by Upper District upon money borrowed for advancements made by it or interest which would have been received by the District, but which it lost by reason of making such advancements.
(b) In complying with the terms of said judgment.
(c) In keeping the records, making the determinations and collecting the moneys required by the later provisions of this contract.
2. "Assessable Pumpage"  The amount of ground water produced in the applicable calendar year by or on behalf of any Pumper by pumping or extraction thereof from the Upper Area, including ground water produced under rights hereafter acquired from any source.
3. Common Terms with Judgment  All terms specially defined in said judgment are used herein in the sense in which they are therein defined, and said special definitions are incorporated herein by this reference.

OPERATIVE PROVISIONS
1. Consideration for Execution. The great majority of the defendants in the action are situated in whole or in part within Upper District and pump water therein. Certain defendants, including the Cities of Alhambra, Azusa and Monterey Park, as well as the City of Whittier which is not a defendant, lie outside Upper District. Execution of this agreement by all parties to it is essential to induce each party hereto to execute this agreement, and likewise, execution of the Stipulation for Judgment by all defendants in the action is necessary to induce each party hereto to execute this contract. Each party executes this contract in consideration of its execution by the other parties, and in consideration of the execution of the Stipulation by the parties thereto. Moreover, by this contract each party other than City of Whittier waives its right to cross-complain in the action so as to bring City of Whittier into the action as a party.
*745 2. Intervention by Upper District. In consideration of the execution of this contract by Pumpers and to contribute to the physical solution of providing adequate water for its inhabitants, Upper District has intervened as a defendant in the action and agrees to execute the stipulation for said judgment.
3. Administration. Upper District shall administer the provisions of this contract, as to all Pumpers, including additional parties hereto mentioned in Paragraph 16.
4. Covenant to Reimburse. Each Pumper hereby agrees to pay to Upper District such Pumper's share of Contract Costs allocated and determined as provided below.
5. Allocation of Costs Among Pumpers. Pumpers agree among themselves, each for the benefit of all other Pumpers, to share and participate in the payment of any sums due Upper District hereunder in such proportion as the Assessable Pumpage of each Pumper bears to the total Assessable Pumpage of all Pumpers for the applicable period covered by any assessment as hereinafter provided, subject to the provisions of Paragraphs 9 and 11 below.
6. Reports by Pumpers. Pumpers shall file under penalty of perjury the reports hereinafter specified in the form provided by Upper District, as follows:
(a) Time and Procedure for Filing. Each year, on or before March 1, each Pumper shall file with Upper District a written report of its extractions of water from Upper Area for the preceding calendar year containing the information set forth in subparagraph (b) of this paragraph.
(b) Contents of the Report. Such annual reports to Upper District shall set forth:
(1) The name and address of the Pumper; and
(2) The number of acre feet of water which was pumped or extracted from Upper Area by or on behalf of the Pumper during the calendar year covered.
(c) Determination in Lieu of Report. In the event any Pumper fails to so file such report, Upper District shall make a determination of the Assessable Pumpage of such Pumper, which determination, subject to the provisions of Paragraph 9 below, shall be final and binding.
*746 7. Notice of Assessment. On or before June 1 of each year, Upper District shall serve a Notice of Assessment on each Pumper covering the preceding calendar year which will contain a statement of:
(a) The amount of Assessable Pumpage by each Pumper;
(b) A detailed statement of Contract costs during the preceding calendar year, if any; and
(c) A statement of the amount of such Contract Costs which are assessable to and payable by the Pumper to whom such notice is sent.
8. Payment  Delinquency and Default. All assessments herein provided for shall be due and payable on the following July 31. In the event of nonpayment of any assessment, Upper District may bring an action and shall have the right to recover such assessment, together with interest thereon at the rate of 7% per annum from the date of delinquency and costs of suit, including any reasonable attorneys' fees incurred.
If, after due diligence, Upper District is unable to collect a Pumper's allocated cost, such uncollectible amount (including interest, costs and attorneys' fees) shall be prorated among and paid by the other Pumpers in the same proportions as they paid assessments for the year or years in question. Said proration shall be billed and payable with the next succeeding assessment.
9. Redetermination of Assessable Pumpage. Any Pumper who has paid his assessment as herein provided may at any time within 90 days after receipt of Notice of such Assessment request a redetermination of the Assessable Pumpage of such Pumper or of any other Pumper or Pumpers reflected in such notice. Such request shall be addressed in writing to Upper District and shall set forth the basis of the requesting Pumper's belief that such data are incorrect. Upon the receipt of any such request, the following procedures shall be undertaken by Upper District:
(a) Notice of Request for Redetermination. Upper District shall forthwith notify in writing any Pumper whose Assessable Pumpage has been questioned, of the fact of such request and the name of the requesting Pumper. Notice shall further be sent to all Pumpers that procedures will be undertaken pursuant to this *747 paragraph, and shall state briefly the issues to be determined.
(b) Availability of Records. Subsequent to such notice, the records of the Pumper whose Assessable Pumpage is subject to a request for redetermination shall be made available at reasonable hours and upon reasonable demand to Upper District, insofar as such records are relevant to a determination of the Assessable Pumpage of the Pumper during the period involved.
(c) Investigation and Notice of Hearing. Upper District shall conduct an investigation and shall by written decision served on all Pumpers redetermine or affirm such Assessable Pumpage. Upper District may at its option set a date for hearing. In such event, at least ten days' notice in writing of said hearing date shall be given to all Pumpers.
(d) Conduct of Hearing and Decision. If hearing be held, Upper District shall not be bound therein by strict rules of evidence, but may rely on any evidence which it deems of probative value. Any Pumper may present evidence and arguments thereat. The written decision of Upper District, with or without such hearing, shall be served on all Pumpers and shall be conclusive for purposes of this contract, unless said issue is submitted to a court of competent jurisdiction within 90 days from notice of such decision.
(e) Reallocation of Contract Costs. If Assessable Pumpage is modified by any such decision, Contract Costs shall be reallocated in accordance therewith. Said reallocation shall be billed and payable with the next succeeding assessment.
10. Water Rights Unaffected. This contract relates solely to the equitable allocation of Contract Costs and does not involve or constitute an admission or agreement as to the water rights of any Pumper. Execution of this contract or of the said Stipulation for Judgment shall not prevent any party hereto from bringing or maintaining any action or proceeding to determine rights to pump, extract or store water, or to limit or curtail any pumping, extraction or storage of water in or from Upper Area or elsewhere, except as limited by Paragraphs 1 and 16 of the Operative Provisions hereof.
*748 11. Changed Conditions. It is recognized that conditions in Upper Area may hereafter change to such an extent that it may become equitable to modify either the total obligation of Pumpers to Upper District hereunder or the allocation of Contract Costs. While this contract is entered into to assure Upper District of reimbursement of an amount up to its entire Contract Costs, it is not intended hereby, and this contract shall not be deemed, to prevent Upper District from modifying and reducing such obligation or from applying other relief which may reduce the burden on Pumpers. Without limitation upon the power of Upper District to otherwise reduce the aggregate amount payable under this contract, the following specific instances of changed conditions are contemplated:
(a) Allocation of Portion of Burden to Taxes. It may at some future date appear equitable and fair to allocate all or a portion of Contract Costs to ad valorem taxes or other revenues of Upper District. In such event, Upper District may, in the discretion of its Board of Directors, allocate all or a portion of Contract Costs to such revenue sources and the remainder, if any, thereof, shall be payable under the terms of this contract.
(b) Imposition of Pump Tax. If Upper District should acquire and exercise the power to levy a tax or assessment upon the pumping or extraction of ground water within its boundaries and such power may be exercised for the purpose of paying all or a portion of Contract Costs as herein defined or the proceeds of such tax or assessment may be used to purchase Make-up Water as herein defined, then the proceeds of such tax or assessment shall first be used by Upper District to apply towards the Contract Costs otherwise payable by Pumpers within Upper District or towards paying the share of Make-up Water costs otherwise required of said Pumpers.
(c) Adjudication of Rights. If all or substantially all of the water rights within Upper Area shall be adjudicated (including the rights of all Pumpers), and its natural and safe yield determined, then this contract shall be deemed modified to the extent that Assessable Pumpage shall include only that amount of water produced over and above the safe yield portion of adjudicated rights owned by any Pumper; provided that this subparagraph (c) shall not apply to any year in which the *749 aggregate of all Assessable Pumpage as so modified is less than 25,000 acre feet.
12. Effective Date. This contract shall be effective ten (10) days after notice in writing of execution thereof by all parties, which notice shall be given to all Pumpers by Upper District, but shall cease and terminate on July 1, 1967, unless by said date (a) this contract shall have been validated as provided below, and (b) the Judgment shall have been rendered.
13. Validation. Within four months after this contract becomes effective, a proceeding or proceedings shall be instituted by Upper District in a court of competent jurisdiction by an appropriate action or actions for determination of the validity of this contract.
14. Term. The term of this contract shall commence upon its effective date and continue so long as the Judgment, as entered or as modified, shall remain in effect, subject, however, to the provisions of Paragraph 12 above.
15. Notices. Any notice to be served upon any party hereunder may be served either personally or by mail. If served by mail, such notice shall be mailed in the County of Los Angeles, State of California, by certified mail, postage prepaid, return receipt requested, or by registered mail, and shall be addressed to the party to be served at its address as set forth below, or (in the case of Upper District) at such other address as it may have last specified in writing to the Pumper or Pumpers involved for the service of notices hereunder, or (in the case of a Pumper) at such other address as it may have last specified in writing to Upper District for the service of notices hereunder. Any notice so served by mail shall be deemed to have been served upon the first business day (excluding Saturdays, Sundays and holidays) after such mailing.
16. Additional Parties. In addition to Pumpers and their successors and assigns referred to in Paragraph 17 below, any other person or entity who or which shall pump or extract water in or from Upper Area (herein referred to as an "additional party"), may become a party to this contract, provided (a) Upper District shall give its written consent thereto, and (b) no Pumper or additional party shall serve upon Upper District its written objection thereto. If Upper District shall give its written consent to execution of this *750 contract by an applying additional party, it shall then give written notice of such application and consent by Upper District to each Pumper and each additional party, and if within thirty (30) days after such notice no Pumper or additional party shall have served upon Upper District its written objection to execution of this contract by the applying additional party, such additional party's application shall be deemed to have been accepted and it may become a party to this contract by delivery to Upper District of a duly executed instrument in writing stating that such person or entity joins in and becomes a party to this contract.
Any additional party so joining shall become bound by all obligations of this contract, becoming due or which should be performed within the terms of this contract on and after the ensuing January 1. Such obligations include the duty to make the report of extractions during the preceding calendar year (i.e., the year in which the contract is executed) required by Paragraph 6, and to make the payment based upon such extractions as required by Paragraph 5, provided, however, that such additional party shall have no liability under Paragraph 8 with respect to any nonpayments of an assessment based upon extractions by a Pumper or other additional party prior to the year in which such additional party joins in this contract.
As to each Pumper who executes this contract after it becomes effective, Upper District agrees that for a period of 90 days after giving its said written consent, it will bring no action against such additional party to limit or define its rights to pump water in or from Upper Area. Further, if more than one such Pumper shall become a party to this agreement at the same time as any other pumper, each will execute and shall be deemed to have executed this contract and to have joined therein in consideration of the joinder in this contract by the other or others concurrently joining in this contract.
Any such additional party shall be deemed a Pumper for all purposes of this agreement.
17. Successors and Assigns. This contract shall inure to the benefit of and bind the successors in ownership of the water rights of the parties. If any Pumper shall sell or transfer or agree to sell or transfer its water rights in Upper Area or any part of such water rights, such Pumper shall require as a condition of any such sale, transfer or agreement *751 that the purchaser or transferee, if not already a party to this contract, shall execute this contract and become a party thereto. Upon a full transfer of such rights by a Pumper and assumption by the assignee as above provided, the assigning Pumper shall be discharged of obligation hereunder. If such Pumper fails to obtain such assumption (except in cases of a transfer under order of court or by operation of law) the assigning Pumper shall remain bound by the contract and production of water by said assignee by the exercise of the right assigned shall be treated as production by such Pumper.
18. Execution in Counterparts. This contract may be executed in counterparts (each counterpart being an exact copy or duplicate of the original) and all counterparts collectively shall be considered as constituting one complete contract.
IN WITNESS WHEREOF this contract is executed by the undersigned by its duly authorized officer.
 Dated _________________________
 _________________________
 (SEAL) By ______________________
 By ______________________
NOTES
[*] Assigned by the Chairman of the Judicial Council.
[1] Filed on behalf of the Cities of Arcadia, Covina, El Monte, Glendora, Monrovia and South Pasadena, Baldwin Park County Water District, San Gabriel County Water District, Azusa Valley Water Company, California Cities Water Company, California Water & Telephone Company, Covina Irrigating Company, East Pasadena Water Co., Ltd., Glendora Irrigating Company, San Gabriel Valley Water Company, Southern California Water Company, Suburban Water Systems and Vallecito Water Co.
[2] "The City of Long Beach shall continue in the ownership and enjoyment of all water and water rights vested in it, and ownership of the right to develop, economize, control, use, conserve, and utilize all water flowing or being beneath the surface of any and all lands now owned or that may be hereafter acquired by it. No water or water rights now or hereafter owned or controlled by the city, shall ever be sold, leased or disposed of, in whole or in part, without the assent of two-thirds of the qualified voters of the city, voting on the proposition at a general or special election, at which such proposition shall be lawfully submitted, and no water shall ever be sold, supplied or distributed to any person or corporation other than municipal, for resale, rental or disposal to consumers or other persons. Provided that nothing in this section contained shall be construed to prevent the ordinary sale and distribution by the city of water to its inhabitants for their own use, or to prevent the supplying or distribution by the city of surplus water to consumers or municipal corporations outside of the city, as elsewhere in this article provided." Charter of the City of Long Beach, California, section 216d, Amendment of 1933.
[*] The map, Exhibit A, and the Engineering Appendix referred to in paragraph 2 of the proposed judgment are not included in this Appendix 2.
[**] For table see following page.